## Western Railway Equipment Co. v. Missouri Malleable Iron Co.

1. CONTRACT—*Substitution of One for Another.*—A later contract may be substituted for and made to completely displace a former one, and there need be no waiver of the old contract to constitute a discharge of it by a substituted agreement.

2. SAME—*Where Parol Evidence is Not Admissible to Explain.*— Where a clause in a contract is too clear to need explanation, parol evidence is not admissible to explain it.

3. PRACTICE—*Effect of Motions for New Trials.*—A motion for a new trial which alleges as grounds that the verdict is contrary to the law and the evidence, is sufficient to raise the question as to the effect of a later contract on a former one, between the same parties.

4. CONSTRUCTION OF CONTRACTS—*By Acts of the Parties.*—While the interpretation by the parties to a contract as evidenced by their acts, will, in cases of doubt, be resorted to for the purpose of arriving at their true intention, this rule is never allowed to govern when the effect will be to overthrow the plain terms of the contract.

Assumpsit, on a written contract. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the February term, 1900. Reversed and remanded. Opinion filed September 8, 1900.

Statement.—Appellant has brought this appeal from a judgment of the City Court of East St. Louis, for $1,223.17, in favor of appellee and against appellant for commissions or royalties under a contract or agreement between the parties of tenor as follows:

" This agreement, made this first day of April, 1896, by and between the Western Railway Equipment Company of the city of St. Louis, State of Missouri, party of the first part, and the Missouri Malleable Iron Company of the city of East St. Louis, State of Illinois, party of the second part, witnesseth : That said party of the first part cove-nants and agrees with said party of the second part to give to same the exclusive manufacture of all the adjust-able lugs and slack adjusters which party of the first part may have made within one year from the thirty-first day of July, 1896; and prior to that time party of the first part agrees to give party of the second part the manu-facture of the above named castings for use on roads which will specify the material of party of second part. Party of the first part agrees to give party of the second part orders for making all the necessary patterns, and agrees to pay for the same, with the understanding that when one thousand castings shall have been made from any one pattern, party of the second part is to refund to party of the first part the money paid for such patterns. It is further agreed between parties of first and second part that this contract shall remain in force for the period of one year from July 31, 1896, and as much longer as Mr. E. S. Marshall shall remain in the employ of party of the sec-ond part as salesman and manager of the railway depart-ment of said party; and in the event of Mr. Marshall leav-ing the employ of said party of second part, said party of the second part is to have ninety days in which to secure another man to fill Mr. Marshall's position, with the under-standing that the man hired shall be satisfactory to the party of the first part; and in this event this contract shall remain in full force and effect without change except as to the annual revision of price as hereinafter set forth. And it is likewise agreed by said party of the first part that as long as this contract continues, and the said party of the second part retains in its employ the said Marshall or some other person or salesman who is satisfactory to said party of the first part, the said party of the second part shall sell the adjustable lugs and slack adjusters for party of the first part, party of the second part paying the salary and trav-

30    APPELLATE COURTS OF ILLINOIS.

VOL. 91.]    Western Ry. Equipment Co. v. Missouri Malleable Iron Co.

eling expenses of said Marshall; party of the first part agreeing to pay to party of the second part an additional ten cents each for all lugs, and two cents each for all slack adjusters sold, whether sold through party of second part or not. And it is further understood that party of the first part shall pay to party of the second part fifty dollars per month as its part of the salary of the said Marshall; same to be paid monthly. Said payment of fifty dollars to be in lieu of a guarantee that one-third of the amount paid to party of the second part for selling devices for party of the first part shall amount to not less than six hundred dollars per year, and whenever one-third of these royalties, viz., three and one-third cents on lugs, and two-third cents on slack adjusters sold shall amount to fifty dollars per month, then monthly payments shall cease; and until such time the said fifty dollars per month is to be credited against the payment of one-third of the royalties. It is further stipulated that should party of the first part secure the control of other devices made of malleable iron, same shall be turned over to party of the second part for manufacture, provided existing contracts for such devices permit same. Price for the manufacture and sale of such articles to be agreed upon between said parties before the party of the first part begins the manufacture of same. Party of the first part agrees to order from party of the second part all the adjustable lugs and slack adjusters as hereinbefore provided, and to pay party of the second part two and one-half cents per pound f. o. b cars St. Louis or East St. Louis for all the adjustable lugs and slack adjusters so ordered. (This price to be subject to an annual revision as hereinafter set forth.) Said payment to be made within sixty days from date of shipment of castings by party of the second part; or, if party of the first part desires to anticipate payments, a discount of two per cent shall be allowed by party of the second part for payment made within ten days from date of shipment of castings. Party of the second part agrees to carry such castings in stock as party of the first part may order, with the understanding that party of the first part shall pay for all castings within ninety days from the time party of the second part has them ready for shipment. In the event that some of the railroad companies who order the devices of party of the first part shall specify castings made by some other malleable works, party of the first part agrees to use due efforts to have such specifications broken; but in the event of their failure to do so, party of the second part agrees to waive its right to manufacture the castings

as hereinbefore provided for, for use on such roads; and in such event only the commission for the sale of such castings is to be paid to party of the second part. Said party of the second part agrees to all the foregoing conditions and accepts them as its part of the contract, and provides that same shall remain in force without change except as to an annual revision of price. Such annual revision to be based on the advance or decline in the price of Lake Superior charcoal pig irons which are used for malleable purposes. The present price on which this contract is made being $14.50 per ton, and at the annual revision of price the price of two and one-half cents per pound to be raised or lowered by the same amount as the price of Lake Superior charcoal pig iron shall have advanced or declined.

In witness whereof the parties hereto have set their hands and seals this 28th day of April, 1896.

H. L. Magee,   [Seal.]
Pres. Missouri Malleable Iron Co.
F. E. Nulsen,   [Seal.]
Secretary.

Attested:

James D. Houseman, Jr., [Seal.] "

In addition to the patented devices spoken of in the contract as "lugs" and "slack adjusters," appellant secured control of other patented devices made of malleable iron, and known as "end castings" and "freight door attachments." Pursuant to the contract, the latter devices were turned over to appellee to manufacture and sell on the same terms as the lugs and the adjusters, except that the commission on sale of freight door attachments was to be ten cents per set, and on the end castings eighty cents per set.

These prices were fixed by a verbal agreement as to the commissions. Appellee manufactured all of the articles mentioned, and from time to time appellant paid the royalties or commissions up to May 1, 1898, when it declined to pay further commissions.

Mr. E. S. Marshall, mentioned in the contract as the salesman of all of the above mentioned articles, was the manager of appellant, a corporation engaged in the manufacture of devices used in railway equipments. He had a large and influential acquaintance with railroad people, which was

32    APPELLATE COURTS OF ILLINOIS.

VOL. 91.]  Western Ry. Equipment Co. v. Missouri Malleable Iron Co.

the reason why he was engaged by both parties to work up
a trade in the various devices that appellant controlled, and
appellee manufactured.   His salary was $300 per month,
and his traveling expenses were sometimes as high as $400
per month.   He would visit railroad managers and show
them the various devices, with a view of getting them
interested in the purchase.   In this way, sales were not
always made at once, and it would take time to get returns.
He continued in the employ of appellee until May 15, 1898,
when he resigned his position of traveling salesman.

In the latter part of April, 1898, a conference was held
between appellant and appellee; as a result of this confer-
ence, appellant contended that the contract of April 28,
1896, was abrogated, and evidence was introduced on the
trial in support of its contention.   Appellee contended
that the contract was only conditionally abrogated, and,
the condition not having been performed by appellant, the
claimed abrogation did not become binding on appellee.
In May, 1898, the parties entered into another contract as
follows :

"This agreement, made the first day of May, 1898, by
and between the Western Railway Equipment Company,
of the city of St. Louis, State of Missouri, party of the first
part, and the Missouri Malleable Iron Company, of the city
of East St. Louis, State of Illinois, party of the second part,
witnesseth :  In consideration of the terms of this agree-
ment and the advantages to be derived therefrom by each
party, the parties hereto agree as follows :  The party of
the first part hereby covenants and agrees to give party of
the second part the exclusive right to manufacture the de-
vices made in whole and in part of malleable iron now in
the control of the party of the first part; provided, how-
ever, and it is expressly understood and agreed, that the
devices now owned or controlled by the party of the first
part which may enter into the construction of cars built
by the Missouri Car and Foundry Company, shall be and
are excepted from the terms of this agreement, and the
party of the second part hereby waives its right to man-
ufacture such devices.   The party of the first part further
agrees to pay the party of the second part for the manufact-
ure and delivery of all combination lugs, slack adjusters,
end castings, spring seats and side bearings, or other devices

now owned or controlled by party of the first part, the price of two dollars and forty-five ($2.45) per hundred pounds, f. o. b. cars, St. Louis and East St. Louis. In addition to the above price per pound the party of the first part shall pay the party of the second part the sum of one dollar ($1) per set (of four) for fitting up end castings and spring seats; the party of the first part also to furnish the necessary spring cotters required in assembling the end castings and spring seats. If the party of the second part succeeds in devising any method of cheapening the means of fitting end castings, party of the first part is to receive the benefit of such saving. Party of the first part shall pay party of the second part the sum of one dollar and sixty-five ($1.65) cents per set of two doors for all side door fixtures and sixty-three and one-half (63½) cents for each end door fixture. The above prices are based upon malleable castings required to complete a set of side door fixtures weighing forty-one (41) pounds, and a set of end doors weighing thirteen and one-half (13½) pounds. For any alterations or changes in the door fixtures which shall add to or deduct from the above weight, a charge or credit shall be made at the rate of three and one-half (3½) cents per pound and added to or deducted from the aforesaid price per set as the case may be. Party of the first part to furnish at their own expense the gas pipe required in fitting up the door fixtures. It is further agreed that payment for all castings delivered during one month shall be made sixty days after the first of the month following such delivery; a cash discount of one per cent to be allowed by the party of the second part on all bills paid within ten days after first of month following such delivery. Party of second part agrees to manufacture at the prices above stipulated and to hold in stock, subject to order of party of the first part, such castings as party of first part shall order from time to time; with the understanding that party of the second part shall have the privilege, thirty days after such castings are ready for delivery, of billing to party of first part any castings so ordered, upon the same terms as if they were then ordered for delivery, and all castings so billed shall be paid for upon the terms hereinbefore provided for, whether disposition of same shall have been ordered or not; and with the further understanding and agreement that party of the first part shall not have the privilege of billing castings under this provision, unless castings on hand for such thirty days exceed in value the

34    APPELLATE COURTS OF ILLINOIS.

VOL. 91.]   Western Ry. Equipment Co. v. Missouri Malleable Iron Co.

sum of three thousand (3,000) dollars. For the purpose of this agreement it is agreed that all castings now on hands shall be regarded as ready for delivery sixty (60) days after the date of this contract, and that all orders for shipment given by party of the first part shall be filled from the oldest stock on hands, unless otherwise ordered. It is understood and agreed that all the castings furnished under this agreement by the party of the second part are to be straightened and ground, and are to be furnished true to pattern, and finished in all respects in a good and workmanlike manner. Party of the second part is not to be held liable for any defects which may develop in the castings it has furnished beyond the original value of the castings, or the replacement of defective castings with perfect ones. It is further understood and agreed that the party of the first part shall purchase from the party of the second part all patterns not yet paid for, which have been ordered by the party of the first part, or used to complete the orders of the party of the first part, and shall pay therefor any balance now remaining unpaid on such pattern account; it being distinctly understood and agreed that the price to be paid by the party of the first part for such patterns shall be the actual cost price thereof, as shown by books of the party of the second part. It is further understood and agreed that the party of the first part shall furnish or pay for all the patterns that may be needed to complete the orders of the party of the first part; all patterns so furnished or paid for to be and remain the property of the party of the first part. Patterns for all small work to be full and satisfactory gates of brass or metal patterns. Said parties hereby mutually agree to accept all the conditions and provisions herein. This contract shall remain in force without change until May the first, 1899, and shall continue in force thereafter until either party shall elect to terminate the same. After May first, 1899, either party hereto may terminate the same at any time, provided that at least six months' notice in writing shall have been given to the other party of such election to terminate. In witness whereof the parties hereto have hereunto set their hands and seals this sixteenth day of May, 1898."

(Signatures of parties here follow.)

Evidence was introduced on the part of appellee, that at the time of making the last contract, it was orally agreed that the first contract should be allowed " to work itself out," as to castings on hand, amounting at that time to the

sum of $17,000; this evidence was objected to by appellant as incompetent, because it tended to vary the following clause of the contract of May 16th:

"For the purpose of this agreement it is agreed that all castings now on hand shall be regarded as ready for delivery sixty (60) days after date of this contract. And all orders for shipment given by party of the first part shall be filled from the oldest stock on hand, unless otherwise ordered."

On the part of appellant, it is contended that this clause refers to the $17,000 of castings made under the first contract, and that under the provision quoted, these goods were taken out from under the commission charges. On the part of appellee, it is contended that the above clause refers to the castings made between May 1st and May 16th, so as to leave the old contract in force as long as Mr. Marshall was in its employ, and for a period of ninety days thereafter, that being the time given appellee to secure another salesman. No person was employed as salesman in the place of Mr. Marshall after he left the employ of appellee.

If appellee is entitled to commission or royalties, it is admitted that the amount as evidenced by the judgment rendered, is correct. And it is also admitted that all commissions earned prior to the 1st day of May, 1898, except $12.50, have been paid.

Sale & Sale and Messick, Moyers & Crow, attorneys for appellant.

Wise & McNulty, attorneys for appellee.

Mr. Presiding Justice Bigelow delivered the opinion of the court.

The principal question presented for determination is, whether appellee is entitled to royalties or commissions on goods shipped on appellant's orders after May 1, 1898, and for ninety days after Marshall left the employ of appellee, which was May 15, 1898.

36 APPELLATE COURTS OF ILLINOIS.

VOL. 91.] Western Ry. Equipment Co. v. Missouri Malleable Iron Co.

The answer depends upon the effect to be given to the later contract, which by its terms was made to relate back and to speak from May 1, 1898.

A later contract may be substituted for and made to completely displace a former contract. Bishop on Contracts, Secs. 68, 174.

There need be no express waiver of the old contract to constitute a discharge of it by a substituted agreement. Clark on Contracts, 611, 612. It is true the contract of May 16, 1898, does not in express terms abrogate the contract of April 1, 1896, but we are of the opinion that by necessary implication, such is the effect of it.

The clause of the latter contract in regard to "all castings now on hand," which was sought to be explained by parol proof on the part of appellant, is too clear to need explanation, and the parol evidence offered by appellee and admitted by the court, that the old contract of 1896 should be permitted "to work itself out," should not have been allowed to go to the jury, over appellant's objection to it; the ruling of the court in admitting it was error, and the exception to the ruling was well taken.

There were no special pleas interposed, but by stipulation of the parties, all special matters of defense were provable under the general issue. It would have been a good special plea in bar to have averred that the old contract had been superseded by a later one, and this was the reason why the court admitted the later contract in evidence when offered by appellant.

When the contract was admitted it became the duty of the court to construe it; and while no instruction asked by appellant specifically informed the jury that the later contract was, by its terms, a bar to any claim under the first contract, that had accrued after May 1, 1898, yet appellant's motion for a new trial alleged that the verdict was contrary to the law and the evidence, and that was sufficient to raise the question as to the effect of the later contract on the first contract, on which the suit was brought.

If "all castings now on hand," meant castings made

after May 1, 1898, it is not easily seen why the contract should further provide that orders should be filled from the oldest stock on hand, admitting that the age of the stock should be counted from the 16th rather than from the 1st of May. It does not appear that any castings had been made between the two dates.

Why was the later contract made to relate back to May 1st, unless the parties to it understood that all royalties or commissions that had accrued under the contract of April 1, 1896, had been substantially paid, and that the new contract was to govern the intermediate space of time between May 1 and 16, 1898, as well as the future?

Why was the later contract, which seems to have been executed May 16th, made to relate back to May 1st, unless the parties knew and had in mind that up to that time, all royalties or commissions had been substantially paid, and that the contract was to govern the intermediate space of time as well as the future?

This view of the matter makes it unnecessary to determine whether royalties or commissions could in any event be collected, except for the time that Marshall or some other salesman was in the employ of appellee.

The mutual promises in the new contract are a good consideration for that contract, and they are also a good consideration for the abandonment of claims for royalties or commissions earned between May 1 and May 15, 1898, when Marshall left appellee's employ.

The contract of May 16, 1898, by its terms covers all matters referred to in the contract of April 28, 1896, and as we understand the matters in dispute between the parties, as evidenced by their deliberate acts in writing, the contract of May 16, 1898, completely superseded the first contract; and as the matter of royalties or commissions is not mentioned in the last contract, no claim for them can be enforced. Stow v. Russell, 36 Ill. 18.

Much stress is laid on the fact that the prices for manufacturing under the old contract, were higher than under the new one; and that on all goods previously made, and

shipped during May, June, July, and up to August 15, 1898, appellant paid the prices provided in the first contract. Appellee claims, with some plausibility, that such payments were constructions put upon the later contract by the parties to it, showing that as long as the old goods were on hand, the old contract governed.

While the interpretation by the parties to a contract as evidenced by their acts, will, in cases of doubt, be resorted to for the purpose of arriving at the true intention of the parties to it, this rule is never allowed to govern when the effect would be to overthrow the plain terms of the contract. Bishop on Contracts, Sec. 412.

The argument advanced, claims more than is warranted by the evidence, as appellant never by its acts showed it understood the contract of 1896 was in force as to commissions, since it constantly refused to pay commissions after May 1, 1898.

For the error of the court in admitting evidence to go to the jury on the part of appellee, that the first contract remained in force after the date when the last contract took effect, and for the error in overruling plaintiff's motion for a new trial, because the verdict of the jury was contrary to the law, the judgment is reversed and the cause remanded.